Rockingham
No. 79-051

QUENTIN ELWOOD

v.

GISA BOLTE AND EUGENE TOUGAS

June 27, 1979

*Law Office of Stanton E. Tefft*, of Manchester, and *Grinnell & Bureau*, of Derry (*Daniel J. Harkinson* orally), for the plaintiff.

*Sanders & McDermott P.A.*, of Hampton (*Ann C. Smith* orally), for defendant Eugene Tougas.

DOUGLAS, J.   This case raises questions concerning the liability of an airplane owner for a pilot's negligence, and the rule of damages to be applied when the negligence has resulted in the destruction of fruit-bearing trees in a commercial orchard. We affirm the trial court's finding that the airplane owner is liable for damages but reverse and remand for a computation of damages in accordance with this opinion.

On February 2, 1972, defendant Gisa Bolte was to pilot defendant Tougas' single-engine airplane from Beverly, Massachusetts, to Manchester, New Hampshire, leave it for servicing, and then fly another plane owned by her employer, Lindsey Perry, back to Beverly. During the course of the flight to Manchester, Bolte failed to engage the auxiliary fuel tanks in a timely manner, ran out of gas, and crash-landed the plane in the plaintiff's orchard. The plaintiff, a commercial apple grower, brought suit to recover for the destruction of eleven trees and damage to four others.

Bolte defaulted on the claim of negligence against her. The trial court found that a master-servant relationship existed between Tougas and Bolte at the time of the crash, and held Tougas liable. The court assessed damages of $2,600. Both the plaintiff and the defendant excepted to the denial of certain of their requests for findings and rulings, and the case was reserved and transferred to this court by *King*, J.

Defendant Tougas excepts to the trial court's denial of his request for a ruling that Bolte was a bailee of the aircraft and was acting on her own for the benefit of a third party. He argues that Bolte had

complete possession and control of the plane, and cites cases in support of the owner's nonliability as a mere bailor under such circumstances.

■ The trial court found that one of the reasons for the flight was to have the plane serviced in Manchester. Tougas controlled the destination and told Bolte what to do with the plane at the conclusion of the flight. Because he retained elements of control, a master-servant relationship was created rather than a bailment. *Hunter v. R. G. Watkins & Son, Inc.*, 110 N.H. 243, 265 A.2d 15 (1970). The negligent act occurred in the context of the performance of an act for owner Tougas. This gives rise to his liability. *Richard v. Amoskeag Mfg. Co.*, 79 N.H. 380, 109 A. 88 (1920).

■■ The fact that the flight provided a benefit to both Tougas and Bolte's employer does not destroy the agency relationship, because a servant may simultaneously serve two masters. RESTATEMENT (SECOND) OF AGENCY § 226 (1958). Nor is it fatal to the relationship that Tougas lacked control over the method by which Bolte operated the plane. *Hunter v. R. G. Watkins & Son, Inc.*, 110 N.H. at 246, 265 A.2d at 17.

■■ A factual finding by the trial court supported by evidence in the record is binding upon the reviewing court. *New Bradford Co. v. Meunier*, 117 N.H. 774, 776, 378 A.2d 748, 750 (1977); *Ciborowski v. Robinson*, 116 N.H. 723, 724, 366 A.2d 493, 494 (1976). Because there is ample evidence to indicate the existence of an agency in fact, we will not disturb the trial court's determination of this issue.

The plaintiff excepts to the denial of his requests for findings on the applicable measure of damages. He argues that damages should include compensation for the decreased apple production caused by the destruction of and damage to the apple trees. The defendant argues that the proper measure of damages is the value of the trees at the time of the accident.

■ Each of the trees in a commercial orchard derives its value solely from its ability to produce fruit. Evidence at trial showed that only one-year-old "whips" are available to replace the destroyed thirteen-year-old trees. Whips take thirteen to sixteen years to reach full production capacity. The plaintiff suffers not one loss but a series of losses until the new trees reach maturity. Before the crash the plaintiff had a quantifiable expectancy of future apple production from the trees, which constitutes a portion of the value of his orchard as a going concern. This portion has been irretrievably lost as a result

of the defendant's negligent act. Because the purpose of damages is to put the injured party as nearly as possible in the same position he would have been had the injury not occurred, *Emery v. Caledonia Sand and Gravel Co., Inc.*, 117 N.H. 441, 446, 374 A.2d 929, 933 (1977); C. MCCORMICK, DAMAGES § 137 (1935), the plaintiff can only be made whole if compensated for that part of his lost production which cannot be offset by the productive output of new trees. *See Woodburn v. Chapman*, 117 N.H. 906, 908, 379 A.2d 1038, 1039 (1977).

Damage to commercial fruit-bearing trees is akin to damage to a crop which cannot be reestablished in the succeeding growing season. Damage to such a crop has been measured in other jurisdictions in terms of revenues lost until the crop can be reestablished. *See Binder v. Perkins*, 213 Kan. 365, 516 P.2d 1012 (1973); *Casey v. Nampa and Meridian Irrigation District*, 85 Idaho 299, 379 P.2d 409 (1963); *Black v. Ellithorp*, 382 P.2d 23 (Okla. 1963). Compensation for trees in a commercial apple orchard damaged because of the negligence of a crop-duster has been allowed for "retarded production" while the trees were being rehabilitated. *Watkins v. F.M.C. Corp.*, 12 Wash. App. 701, 704, 531 P.2d 505, 507 (1975).

■ The trial court awarded $2,600 in damages, but did not indicate the measure of damages used. The court denied the plaintiff's requested measure of damages based on future lost apple production, and granted the defendant's request that damages be assessed as of the date of the accident. We remand for a computation of damages based on the value of the plaintiff's lost apple production, less any saved production expenses. *See Woodburn v. Chapman supra.*

■ The lost production of the *damaged* trees equals the value of the apples that would have been produced had the trees not been damaged, less the value of the apples actually produced and saved production expenses. Because there was an impermissible delay of several seasons between the accident and the planting of new whips, actual production value from the moment of destruction is irrelevant to the computation of the net production loss of the *destroyed* trees. The lost production value of the destroyed trees thus equals the value of the apples that would have been produced had the destruction not occurred, less the value of the apples that would have been produced had the plaintiff timely acted to mitigate damages and less saved production expenses. *See Emery v. Caledonia Sand and Gravel Co., Inc.*, 117 N.H. 441, 374 A.2d 929 (1977).

In light of our holding on the proper computation of damages, we need not consider other issues raised by the plaintiff.

*Remanded.*

BOIS, J., did not sit; the others concurred.