Nollet v. Palmer                        CV-02-265-JD  07/18/02
            UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE


Elaine Nollet

     v.                               Civil No. 02-265-JD
                                      Opinion No. 2002 DNH 136
John Palmer


                          O R D E R


     The plaintiff, Elaine Nollet, filed suit in state court

against the defendant, John Palmer, alleging that Palmer entered

her property and cut down and removed a number of trees without

her permission.  Nollet alleges claims of intentional trespass in

Count I, and negligent trespass in Count II.  Palmer filed a

timely notice of removal pursuant to 28 U.S.C. § 1446, alleging

that this court has original jurisdiction over the action based

on diversity of citizenship under 28 U.S.C. § 1332.  See 28

U.S.C. § 1441(b).

     Nollet moves for summary dismissal of the action with remand

to state court, on the ground that this court lacks subject

matter jurisdiction.  See 28 U.S.C. § 1447(c).  She asserts that

the amount in controversy in this case is less than $75,000, and

therefore fails to satisfy the statutory requirement for the

court to exercise diversity jurisdiction.  See 28 U.S.C. § 1332.

Palmer objects.

## Background

Nollet lives in New Castle, New Hampshire, in a home on property that abuts property owned by Adelbert and Agnes Palmer. The defendant, John Palmer, is the Palmers' adult son who lives in Boston, Massachusetts. Nollet alleges that Palmer frequently visits his parents at their home in New Hampshire. In September of 1999, Nollet discovered that a number of trees in the rear of her property had been cut down and removed without her permission. She claims that she subsequently learned that Palmer was responsible for the felled trees. She brought this action against Palmer in state court in a writ of summons (hereinafter "complaint") dated April 30, 2002.[1]

In Count I of the complaint, Nollet brings a claim of intentional trespass. She alleges that in the spring of 1999, Palmer "with force and arms broke and entered" her property and cut down and removed a number of trees, causing injury. She seeks damages in "a sum within the jurisdictional limits of this [state court] . . . enhanced damages as a result of willful and wanton acts of the Defendant given the flagrant nature of such trespass and . . . multiple damages pursuant to [Revised Statutes Annotated ("RSA") 227-J:8(II)]."

_____

[1]She previously filed a separate suit against Adelbert and Agnes Palmer in state court.

2

In Count II, Nollet brings a claim of negligent trespass. She alleges that in the spring of 1999, Palmer entered her property and removed trees. She claims that Palmer had a duty to act in a careful manner, in order to avoid entering her property and removing trees located on her property. Nollet alleges that Palmer negligently, carelessly, and unlawfully entered her property and removed trees, causing injury. For the negligent trespass claim she seeks damages in "a sum within the jurisdictional limits of this [state court]; provided further, that the Plaintiff is entitled to multiple damages for the wrongful cutting and removing of her trees all pursuant to [RSA 227-J:8(II)]."

## Discussion

Palmer filed a notice of removal on the basis of diversity of citizenship. See 28 U.S.C. § 1441 and § 1446. He asserts that at the time Nollet filed the suit, a review of her complaint and the discovery materials from the elder Palmers' case showed that the amount in controversy exceeded $75,000. Under 28 U.S.C. § 1441 and § 1446, a defendant may remove an action from state court to a federal court that has subject matter jurisdiction over the action. A party seeking to remove an action from state to federal court has the burden of showing that jurisdiction is

3

proper. See Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999); see also 28 U.S.C. § 1441. Removal statutes are to be "strictly construed." Danca, 185 F.3d at 4. Uncertainties regarding the amount in controversy are resolved in favor of remand. See Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994); Therrien v. Hamilton, 881 F. Supp. 76, 78 (D. Mass. 1995). "[The court has] a responsibility to police the border of federal jurisdiction." Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001) (quotation omitted).

To establish subject matter jurisdiction based on diversity, the defendant must show that the amount in controversy in the action exceeds the sum of $75,000. See 28 U.S.C. § 1332(a); see also Bull N.H. Info. Sys., Inc. v. Hutson, 229 F.3d 321, 328 (1st Cir. 2000). "For the purpose of establishing diversity jurisdiction, the amount in controversy is determined by looking to the circumstances at the time the complaint [was] filed." Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995). In general, the sum of damages claimed by the plaintiff provides the amount in controversy, if the claim is made in good faith. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938); Coventry Sewage, 71 F.3d at 4.

However, in this case Nollet has not claimed a specific sum

4

in damages.[2]  The First Circuit has not yet articulated the defendant's burden of proving the amount in controversy where the plaintiff has not claimed a specific amount of damages in the pleadings.  See Kivikovski v. Smart Prof. Photocopying Corp., No. 00-524-B, 2001 WL 274763, at *1 (D.N.H. Feb. 20, 2001).  In the majority of circuits, "when the plaintiff's damages are unspecified, courts generally require that a defendant establish the jurisdictional amount by a preponderance of the evidence."[3] Martin, 251 F.3d at 1290; see, e.g., St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998); Chase, 110 F.3d at 427; Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996); United Food & Commercial Workers Union, Local 919 v. CenterMark Prop. Meridan Square, Inc., 30 F.3d 298, 305 (2d Cir. 1994); Gafford, 997 F.2d at 157-58; see also McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (noting that party asserting jurisdiction has burden of showing

---

[2] RSA 508:4-c provides that a plaintiff shall not specify or allege the amount of damages claimed in an affirmative pleading.

[3] The "preponderance of evidence" standard is articulated both as "more likely than not" and as "proof to a reasonable probability."  See Chase v. Shop 'N Save Warehouse Foods, 110 F.3d 424, 427 (7th Cir. 1997); Gafford v. Gen. Elec. Co., 997 F.2d 150, 158 (6th Cir. 1993).  "These two variations of the preponderance standard appear largely identical."  Penn v. Wal-Mart Stores, Inc., 116 F. Supp. 2d 557, 564-65 (D.N.J. 2000); Kivikovski, 2001 WL 274763, at *1 & n.4.

5

jurisdiction by preponderance of evidence). Accordingly, Palmer will meet his burden if he shows by a preponderance of the evidence that the value of Nollet's claims, if successful, will exceed $75,000. See Kivikovski, 2001 WL 274763, at *1 n.4 & *2.

Palmer contends that Nollet's complaint seeks compensatory damages, enhanced damages, and statutory damages, which if awarded together would exceed the requisite sum of $75,000. Nollet seeks all three types of damages in Count I. In Count II, Nollet seeks compensatory and statutory damages, but not enhanced damages. Presumedly, Palmer bases his argument on Count I because it has potential to yield higher damages than Count II.[4] Accordingly, the court will first determine whether Palmer has shown by a preponderance of the evidence that the damages alleged in Count I exceed $75,000, as required to support diversity jurisdiction.

---

[4]Nollet asserts that in Count I and Count II she alleged two alternate theories of recovery for the same claim, and Palmer does not seem to dispute that characterization of her complaint. Indeed, Palmer's calculation of the amount in controversy includes only one award of compensatory damages and one award of statutory damages, suggesting that he expects Nollet would recover on only one of her two claims.

I.     Count I: Intentional Trespass

In Count I, the intentional trespass claim, Nollet seeks compensatory and enhanced damages, and statutory damages pursuant to RSA 227-J:8.  Enhanced compensatory damages may be properly applied in tort cases "when the act[] complained of ha[s] been accompanied by aggravation, insult, oppression, or malice." Vratsenes v. N.H. Auto. Inc., 112 N.H. 71, 73 (1972) (holding that enhanced damages my be awarded in trespass case).  Enhanced damages are not punitive, and they are not awarded in addition to or separate from actual damages.  See Johnson v. Fernald, 120 N.H. 440, 443 (1980); Vratsenes, 112 N.H. at 73; see also RSA 507:16 (prohibiting punitive damages in New Hampshire).  Enhanced compensatory damages are simply the actual damages incurred, "estimated by the more liberal rule that prevails in the case of malicious wrongs."  Johnson, 120 N.H. at 443.  To justify enhanced damages, a plaintiff must show actual malice.  See id. at 441-42.  "There must be ill will, hatred, hostility, or evil motive on the part of the defendant."  Munson v. Raudonis, 118 N.H. 474, 479 (1978).

Both parties rely on a report prepared for Nollet by consulting arborist Carl A. Cathcart to establish actual

7

damages.[5]  Cathcart fixes the value of the lost trees at $7,220.

Even if Nollet could show malice on Palmer's part, awarding

enhanced compensatory damages ten times the amount of the actual

damages would appear impermissibly punitive.  Where the amount in

controversy is uncertain, the issue is resolved in favor of

remand.  See Therrien, 881 F. Supp. at 78.  Palmer has not met

his burden of showing by a preponderance of the evidence that

enhanced compensatory damages would reach $75,000 for the

intentional trespass claim in Count I.

In addition to enhanced damages, Nollet seeks damages in

Count I under RSA 227-J:8.  Section 227-J:8(I) provides:  "No

person shall negligently cut, fell, destroy, injure, or carry

away any tree, timber, log, wood, pole, underwood or bark which

is on the land of another person . . . without the permission of

that person or the person's agent."[6]  Section 227-J:8(II)

provides a civil penalty for violation of RSA 227-J:8(I):  "In

addition to any other civil or criminal penalty allowed by law,

any person who violates [RSA 227-J:8(I)] shall forfeit to the

person injured no less than 3 and no more than 10 times the

---

[5]Cathcart prepared the report for Nollet's use in pending litigation against the elder Palmers.

[6]RSA 227-J:8 replaced the former RSA 539:1, which was repealed effective January 1, 1996.  See McNamara v. Moses, 146 N.H. 729, 733 (2001).

market value of every such tree, . . . ."

Nollet asserts that, even considering the maximum damages allowable under RSA 227-J:8(I), her damages would not exceed $72,220, therefore falling short of the $75,000 amount in controversy required to establish diversity jurisdiction. In further support of her argument, Nollet concedes that her damages are limited to $72,220, which caps her damages to that amount.[7] Palmer argues that the statutory damages may be augmented by $7,220 in compensatory damages, amounting to $79,440, plus an unspecified amount of enhanced damages.

The multiple damages provided in RSA 227-J:8(II) are available "[i]n addition to any other civil . . . penalty allowed by law." The penalty may be awarded in addition to the compensatory damages for the lost trees. See McNamara, 146 N.H. at 731-32, 734-35; see also Woodburn v. Chapman, 116 N.H. 503, 505 (1976) (construing RSA 539:1 to allow compensatory damages as

---

[7] Palmer contends that Nollet's concession of damages is not relevant because a subsequent reduction of the amount in controversy does not defeat diversity jurisdiction. See Coventry Sewage, 71 F.3d at 4. That principle relates to reductions resulting from discovery or a factual error by a third-party, that occur after the case is successfully removed. See id. at 6-7 (holding that third-party billing error that reduced amount in controversy below threshold for diversity jurisdiction did not divest court of jurisdiction). Here, Nollet's concession applies to the value of her claim at the time she filed suit in state court.

well as statutory penalty when a tree confers benefit of enjoyment on plaintiff aside from the tree's value as a marketable commodity). The parties do not dispute at this stage of the proceedings that the value of the trees lost in this case is $7,220. Therefore, the maximum penalty available under the statute is $72,200, in addition to the compensatory damages.

To avoid remand, Palmer has the burden of showing that it is more likely than not that the value of Nollet's claims exceeds $75,000. Because the value of the trees is only $7,200, Palmer must show that Nollet, if successful, would be entitled to a forfeiture of at least nine times that amount under RSA 227-J:8.

In McNamara, the New Hampshire Supreme Court affirmed a penalty of quintuple damages under RSA 227-J:8 in the amount of $6,000, in addition to compensatory damages in the amount of $1,200, the market value of the lost trees. See 146 N.H. at 731, 734-35. The court found that the defendant's actions were willful, and "amply justifi[ed]" a penalty at the "low end of the range" of the statute. Id. at 734. The defendants were informed numerous times that they were cutting trees on someone else's property, they indicated that they did not care, and they continued to cut after the plaintiffs denied them permission to do so. Id. at 734-35.

Based on the analysis in McNamara, Palmer must show by a

preponderance of evidence that his actions were at least willful and would justify a penalty larger than that the quintuple damages awarded in McNamara. Palmer has made no showing of willfulness or of any other circumstances that would support an award of nine or ten times the value of the trees.

## II. Count II

In Count II, the negligent trespass claim, Nollet also seeks compensatory and statutory damages pursuant to RSA 227-J:8. For the reasons discussed above, Palmer has not met his burden of showing by a preponderance of the evidence that Nollet, if successful, would be entitled to a penalty under RSA 227-J:8 sufficient to elevate the amount in controversy beyond the $75,000 threshold for the intentional trespass claim. Furthermore, negligent trespass would result in an even lower showing of wilfulness, and consequently a smaller penalty under RSA 227-J:8. See McNamara, 146 N.H. at 734.

The court concludes that Palmer has not shown by a preponderance of evidence that the amount in controversy in this case exceeds $75,000, as required to maintain diversity jurisdiction under 28 U.S.C. § 1332(a). The case is dismissed for lack of subject matter jurisdiction and remanded to state court, pursuant to 28 U.S.C. § 1447(c).

11

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion to remand to state court (document no. 5) is granted.  In light of this ruling, the defendant's motion to dismiss for failure to state a claim is moot.  The clerk shall enter judgment accordingly and close the case.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge


July 18, 2002

cc:  Lawrence M. Edelman, Esquire
     John P. McGee Jr., Esquire

12

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Elaine Nollet

    v.                        Civil No. 02-265-JD

John Palmer


## PROCEDURAL ORDER

On page 12 of the court's order issued on July 18, 2002, the phrase "enter judgment accordingly and" shall be struck from the last sentence on said page.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

July 19, 2002

cc:  Lawrence M. Edelman, Esquire
     John P. McGee Jr., Esquire